FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 20 2005 ★

P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
MUSTAFA SALAMA,

               Petitioner,                      05 CV 1257 (SJ)

  -against-                                   MEMORANDUM
                                            AND ORDER

UNITED STATES OF AMERICA,

               Respondent.
------------------------------------------------------X

MAIL TO:

LAW OFFICES OF
RICHARD WARE LEVITT
148 East 78th Street
New York, New York 10021
By:    Richard Ware Levitt
Attorney for Petitioner

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York
147 Pierrepont Plaza
Brooklyn, New York 11201
By:    Lee J. Freedman
Attorney for Respondent

JOHNSON, Senior District Judge:

       Currently before this Court are Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 ("Petition") and letter-motion for an expedited disposition of his claims.[1] On

---

[1] Petitioner, in his letter dated June 16, 2005, requested oral argument which the Court subsequently granted. However, having thoroughly reviewed the record the Court no longer deems it necessary to hold oral argument and will adjudicate Petitioner's writ based on the pleadings.

1

December 17, 2001, Petitioner pleaded guilty to credit card fraud in violation of 18 U.S.C. § 1029(a)(5) and was sentenced by this Court on June 13, 2003 to five years probation. Petitioner asserts that his guilty plea must be vacated because it was not knowing and voluntary due to: (1) an alleged due process violation based on Rule 11 of the Federal Rules of Civil Procedure stemming from the Magistrate Judge's failure to advise Petitioner of the mandatory or direct, rather than merely possible, immigration consequences attaching to his guilty plea; and (2) his trial counsel's alleged ineffectiveness in failing to advise Petitioner that his plea would subject Petitioner to mandatory deportation and in failing to correct the Magistrate Judge on this issue. For the reasons set forth below, the motion is procedurally barred and the petition is DISMISSED in its entirety.

## BACKGROUND

On December 17, 2001, Petitioner, a native of Egypt and permanent resident alien, pleaded guilty before Magistrate Judge Steven Gold to a credit fraud conspiracy in violation of 18 U.S.C. § 1029(a)(5) pursuant to a cooperation agreement.[2] The offense to which Petitioner pleaded guilty is defined as an "aggravated felony" under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 8 U.S.C.A. § 237(a)(2)(A)(iii) and therefore subjects Petitioner to mandatory deportation.

---

[2] Respondent has been unable to locate a copy of Petitioner's cooperation agreement but has represented to this Court, upon information and belief, that "the agreement listed deportation in the statutory penalties section." (Resp't Opp'n at 4 n.2.) The Court finds that it is not necessary to review the cooperation agreement because even if the agreement did not list deportation as a statutory penalty, the central issue here is that the Magistrate Judge did inform Petitioner that his plea would be a basis for the government to seek deportation.

2

P-049

At his plea hearing, Petitioner informed Judge Gold that he preferred to proceed in English rather than through the aid of an interpreter, and that he had attended two years of law school in Egypt. (Plea Hearing at 3, 9.) Judge Gold inquired as to whether Petitioner's counsel had discussed with Petitioner the direct and collateral consequences of his plea and Petitioner's counsel stated that she had. (Id. at 11.) Judge Gold asked whether Petitioner was satisfied with counsel's representation to which Petitioner responded, "[a]bsolutely." (Id.)

Thereafter, Judge Gold explained the possible consequences of Petitioner's guilty plea, including deportation. (Id. at 19-22 ("During the period of supervised release, you'll have to follow many . . . rules, especially if you are not deported . . . . If you are deported, you will still be prohibited from committing any crimes while on supervised release . . . . If you serve a prison sentence and you are then deported . . . . And *your conviction, upon your plea of guilty, will be a basis to seek your deportation.* Moreover, if the government does seek your deportation, you will not be permitted to claim that you are innocent of the offense with which you are charged here . . . .)(emphasis added).) Judge Gold then asked Petitioner if he understood the penalties that were explained and Petitioner affirmed that he did. (Id. at 22.) Before Petitioner's plea allocution, Judge Gold asked Petitioner, "[d]o you have any questions you want to ask me or discuss privately with [counsel] about your rights, the penalties, the charge or anything else before we go forward?" (Id. at 26.) Petitioner then conferred with counsel and subsequently informed the Court that he was ready to enter his plea of guilty. (Id.)

3

P-049

Judge Gold found that Petitioner's plea was entered voluntarily, that Petitioner "fully underst[ood] his rights and consequences of his guilty plea," and that there was a factual basis for it (id. at 32); this Court subsequently accepted the plea. Approximately eighteen months after Petitioner entered his guilty plea, on June 13, 2003, this Court sentenced Petitioner to five years probation. Petitioner did not file a notice of appeal.

In September 2004, Petitioner attempted to renew his green card and was taken into the custody of the Immigration and Naturalization Service because his IIRIRA status as an aggravated felon mandated his deportation. (Pet. at 6.) On March 8, 2005, Petitioner filed the instant §2255 motion challenging the validity of his guilty plea based on alleged ineffective assistance of counsel and a Rule 11-based due process violation by the Magistrate Judge in their collective failures to warn him of the mandatory deportation consequences of his guilty plea. Respondent contends: (1) Petitioner is procedurally barred from raising his claims for the first time on collateral review; (2) the instant petition is untimely; and (3) Petitioner's claims lack merit.

## DISCUSSION

The Court first addresses whether Petitioner has satisfied the procedural prerequisites to considering the merits of his claims.

I.  Petitioner's Failure to Raise His Due Process Claim on Direct Appeal

Petitioner claims that Judge Gold's "affirmative misinformation deprived him of due process, embodied in the allocution requirements of Rule 11 . . . . By merely suggesting to Petitioner that he *might* be deported as a result of his guilty plea *if* the

4

government chose to seek deportation, the Magistrate Judge provided Petitioner materially inaccurate information, because in fact Petitioner's plea to an aggravated felony mandated his deportation." (Pet. at 1, 13.) Petitioner did not file a direct appeal and by failing to do so, Petitioner procedurally defaulted this claim. Petitioner's assertion that his plea "was not knowingly and intelligently entered because of misinformation he received from the court regarding the deportation consequences of his guilty plea" (Pet. at 1) could have been "fully and completely addressed on direct review based on the record created at the plea colloquy." Bousley v. United States, 523 U.S. 614, 622 (1998).

The Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review . . . . And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. *Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.*" Id. at 621 (internal quotations omitted) (emphasis added); accord United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal.") Therefore, "if a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted." United States v.

5

DeJesus, 161 F.3d 99, 102 (2d Cir. 1998).[3] Under the cause and prejudice test, "cause" "must be something external to the petitioner, something that cannot fairly be attributed to him .... [and] must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded [petitioner's] efforts to comply with the ... procedural rule." Coleman v. Thompson, 501 U.S. 722, 753 (1991).[4] "Prejudice" is an "actual and substantial disadvantage ... [or] error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

Essentially, Petitioner asserts that his ignorance of applicable immigration law provides the required cause, and his unanticipated automatic deportation provides the prejudice required in order to seek habeas relief. (See Pet. at 10-11.)

> This Court, however, is constrained by the Second Circuit's explicit refusal to hold that 'defendants are subjected to manifest injustice, if held to their plea, merely because they did not understand or foresee [any] collateral consequences.' Thus, the fact that an individual, when entering his plea, misunderstands the prospect of exclusion is, 'without more ... insufficient to render [that] plea involuntary.' [Petitioner's] ignorance of the law, then, does not, in and of itself, constitute the 'complete miscarriage of justice' that § 2255 is intended to remedy; nor does it satisfy the cause and prejudice requirements necessary to excuse [petitioner's] failure to seek relief on direct appeal.

---

[3] Here, Petitioner does not claim actual innocence and it is clear from the record that Petitioner could not meet that standard with respect to the offense to which Petitioner pleaded guilty. Accordingly, the Court will focus solely on the applicable "cause and prejudice" test.

[4] "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." United States v. Pipitone, 67 F.3d 34, 38 (2d Cir. 1995).

6

P-049

United States v. Weiss, 902 F.Supp. 326, 329 (N.D.N.Y. 1995) (internal citations omitted). Because Petitioner cannot demonstrate cause or prejudice regarding his failure to raise his Rule 11 claim on direct review, the Court finds that claim to be procedurally barred and it is therefore dismissed.[5]

II.  Petitioner's Ineffective Assistance of Counsel Claim

Petitioner has not defaulted his claim of ineffective assistance of counsel because such claim may be brought for the first time on collateral review. Massaro v. United

---

[5] Even if this claim were not procedurally infirm, it would still fail on its merits. To the extent that Petitioner's arguments rest on the characterization of his deportation as direct rather than collateral as a result of its mandatory nature, they are unavailing in light of existing case law. In Michel v. United States, 507 F.2d 461, 466 (2d Cir. 1974), the Second Circuit stated, "We do not think that the distinction between a direct and a collateral consequence depends upon the degree of certainty with which the sanction will be visited upon the defendant. We do not agree that it is realistic that the [court] should be under the obligation not only to draw up a complete list of possible consequences, but then in addition to determine the degree of probability of their happening. As we have indicated, he must assure himself only that the punishment that he is meting out is understood." Furthermore, Petitioner does not maintain that he was informed he faced no danger of deportation nor can the Magistrate Judge's statements regarding deportation reasonably be interpreted to suggest that Petitioner was not at risk of deportation. In fact, the plea colloquy included an explicit statement by Judge Gold that, "your conviction, upon your plea of guilty, *will* be a basis to seek your deportation." (Plea Hearing at 19 (emphasis added).) This Court declines to find that Judge Gold affirmatively misled Petitioner into believing that he would not be subject to deportation, particularly in light of Petitioner's admission that he disregarded the significance of the magistrate's several warnings. (See Pet. at 5 ("Mr. Salama did not take the Court's references to deportation to mean that there was any real risk that he would be deported.").)

Notably, courts in this circuit are not even required to advise defendants of the *possibility* of deportation based on a guilty plea. See, e.g., Couto, 311 F.3d at 189 ("Years ago, we concluded that the possibility of deportation based on a conviction was a 'collateral consequence' of a guilty plea, and that the court was not required to inform the defendant of such a possible consequence.") (citing United States v. Parino, 212 F.2d 919, 921 (2d Cir. 1954); United States v. Santelises I, 476 F.2d 787, 789 (2d Cir. 1973) ("The mere failure of a district judge to warn a defendant of the possibility of deportation as a consequence of his plea does not, without more, amount to a violation of constitutional due process, thereby rendering the plea invalid.")); Michel, 507 F.2d at 465 (2d Cir. 1974) ("Where his client is an alien, counsel and *not the court* has the obligation of advising him of his particular position as a consequence of his plea.") (emphasis added); Polanco v. United States, 803 F.Supp. 928, 931-32 (S.D.N.Y. 1992) ("Deportation is a peripheral consequence, not a punishment imposed by the trial judge" and "[a]s such, the court [is] under no duty to warn the petitioner of the likelihood of deportation.") Accordingly, Petitioner's due process claim does not provide a basis for this Court to grant §2255 relief.

7

States, 538 U.S. 500, 509 (2003) (holding that "failure to raise an inffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255"). Specifically, Petitioner contends, "I was completely unaware that I would face *mandatory* deportation if I pleaded guilty .... I absolutely would not have pleaded guilty had I known mandatory deportation would follow." (Pet'r Aff. at 3.) The Court first considers the timeliness of this claim before reaching its merits.

A. *Timeliness under Statutory Limitations Period*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") federal habeas petitions must be filed within a one-year period which begins to run, with certain exceptions, either after the petitioner has exhausted direct appeals or after the time for seeking appellate review has expired.[6] Respondent argues that the instant petition is untimely under § 2255(1) because the one year limitation period expired on June 24, 2004,

---

[6] Specifically, § 2255 states:
> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

8

P-049

more than eight months before Petitioner filed his § 2255 motion on March 8, 2005.[7]

Petitioner does not dispute that his motion would be barred under § 2255(1) but instead claims timeliness under §2255(4) "because the facts supporting the claim were only discovered by Mr. Salama in September 2004 – and could not have been discovered earlier through the use of due diligence – when he sought to renew his green card and learned, for the first time, that because of his guilty plea, he faces mandatory deportation." (Pet. at 1.) Alternatively, Petitioner urges this Court to equitably toll the limitations period because "he was erroneously led by his attorney and the court to believe that his deportation was merely a possibility, and he first learned that it was actually mandatory only six months [prior to filing the instant petition]." (Id. at 7.) For the reasons explained below, this Court concludes that the instant petition is time-barred under § 2255(4) and that the circumstances of Petitioner's case do not warrant equitable tolling.

(1) § 2255(4)

"Section 2255(4) is not a tolling provision that extends the length of the available filing time . . . [but] rather . . . resets the limitations period's beginning date, moving it from the time when the conviction became final . . . to the later date on which the particular claim accrued." Wims v. United States, 225 F.3d 186, 190 (2d Cir.2000). Under this provision the limitations period begins to run on "the date on which the facts supporting

---

[7] The judgment regarding Petitioner's sentence was entered on June 13, 2003. Thus, the date on which the statute of limitations expired, June 24, 2004, amounts to one year after the completion of the ten day period during which Petitioner could have filed a notice of appeal.

9

P-049

the claim or claims presented *could have been discovered through the exercise of due diligence.*" 28 U.S.C. § 2255(4) (emphasis added). According to Petitioner, the limitations period did not start running until September 2004, when Petitioner learned, allegedly for the first time, that he was subject to mandatory deportation upon attempting to renew his green card. (Pet. at 10.) The Second Circuit has determined that the above-stated statutory period runs when the supporting facts could have been discovered "regardless of whether petitioner actually discovers the relevant facts at a later date," Wims, 225 F.3d at 188, and that § 2255(4) "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." Id. at 190 n.4. Thus, the Court must decide when a duly or reasonably diligent person in Petitioner's circumstances would have discovered the effect of a conviction on his immigration status. Wims, 225 F.3d at 190.

The Court is persuaded by Respondent's argument that "Salama was made aware that he could be deported, at the very latest, during his December 2001 guilty plea" and that "a duly diligent person in Salama's circumstances would have discovered the effect of his guilty plea, at the latest, before sentencing, which came almost 18 months after he pleaded guilty." (Resp't Opp'n at 7.) Indeed, Petitioner's ineffectiveness claims accrued, at the latest, at his December 2001 plea hearing when his counsel remained silent during Judge Gold's colloquy. As previously explained, Magistrate Judge Gold made several references to the possibility of Petitioner's deportation at the plea hearing, including a direct statement that "your conviction, upon your plea of guilty, will be a basis to seek your deportation." (Plea Hearing at 22.) Although he may have chosen to make no inquiry into the

10

P-049

magistrate's statements, Petitioner entered his guilty plea knowing that his plea could subject him to deportation.

Petitioner argues that "[a]t no time between his June 2003 sentencing and his September 2004 discovery of his mandatory deportation, could he reasonably be expected to have inquired further about his possible deportation and learned the truth." (Pet. at 10.) However, the Court finds that the relevant event triggering due diligence regarding Petitioner's ineffectiveness claim is the plea hearing during which Petitioner was informed of the possibility of his deportation. The Court further concludes that the eighteen-month lapse between Petitioner's guilty plea in December 2001 and sentencing in June 2003 provided Petitioner with plenty of time to confer with counsel and or the Government regarding Judge Gold's statements in order to assess the likelihood of his deportation. Nevertheless, Petitioner failed to take any steps whatsoever regarding his immigration status until September 2004, and the Court "cannot view that period of inactivity as anything other than a marked lack of diligence." Warren v. Garvin, 219 F.3d 111, 114 (2d Cir. 2000). That Petitioner actually discovered the certainty of his deportation in September 2004 is of no legal significance because Petitioner *could have* discovered that he was deportable as an aggravated felon as early as December 2001, during his plea hearing.[8] See Wims, 225 F.3d at 188; see also Tapia-Garcia v. United States, 53 F.Supp.2d

---

[8] Respondent "disputes Salama's assertion that he first learned of possible deportation during his guilty plea." (Resp't Opp'n at 7 n.3.) However, in the absence of the cooperation agreement, which Respondent claims listed deportation as a statutory penalty, the Court declines to address this contention.

11

P-049

370, 373 (S.D.N.Y. 1999) ("[I]gnorance of the law is not sufficient to sustain the petitioner's burden in a habeas case.") (citations omitted). Accordingly, the Court concludes that the limitations period prescribed by § 2255(4) regarding Petitioner's ineffectiveness claim began to run in December 2001 at the time of his plea hearing.

Since in the instant case § 2255(4) provides an earlier filing date than § 2255(1), the Court finds that the statute of limitations for Petitioner's claims began to run in June 2003 when Petitioner's judgment of conviction became final. (See 28 U.S.C. 2255 ("A 1-year period of limitation shall . . . run from *the latest of* . . . .") (emphasis added).) That period expired in June 2004. Petitioner did not file the instant petition until March 8, 2005, well past the expiration of the statute of limitations. Accordingly, Petitioner's claim that ineffective assistance of counsel rendered his guilty plea invalid is time-barred and it is therefore dismissed.

### (2) Equitable Tolling under AEDPA

"Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." Warren, 219 F.3d at 113. In order to equitably toll the one year limitations period, a petitioner must show that "extraordinary circumstances" prevented him from timely filing his petition. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). "In addition, the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." Id. at 17. The

12

Court has previously found that Petitioner failed to act with reasonable diligence. Nor does Petitioner's case present extraordinary circumstances necessary to justify equitable tolling.[9]

---

[9] Petitioner argues that the extraordinary circumstances are "his attorney's silence and the court's misinformation" which he claims misled him "into believing he was unlikely to be deported when in fact his deportation was certain." (Pet. at 13). He likens his case to Mandarino v. Ashcroft, 290 F.Supp.2d 253 (D.Conn. 2002), in which the court found that extraordinary circumstances warranted tolling the limitations period. This Court does not agree that the two cases are analogous. In Mandarino, the petitioner "was given the understanding at sentencing that he would be eligible to apply for a waiver of deportation and only learned of the unavailability of such relief at the conclusion of his term of imprisonment after the initiation of deportation proceedings." Id. at 260 n.5. Thus, Mandarino involves an affirmative misrepresentation by the court and counsel, which is absent in the instant case.

    Even if the Court could consider the merits of Petitioner's ineffectiveness claim, Petitioner would be afforded no habeas relief. Petitioner states in his affidavit, "Although I believed at the time that I entered it that the plea agreement was a good one, I was not fully informed and I would never have accepted it at the expense of certain deportation and separation from my family . . . . I would have taken my chances going to trial in the hope of obtaining an acquittal . . . ." (Pet'r Aff. at ¶¶ 13, 16.) Petitioner's claim is evaluated under the framework set forth in Strickland v. Washington, 466 U.S. 668 (1984). "A defendant must first establish that 'counsel's representation fell below an objective standard of reasonableness.' Second, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002) (internal citations omitted).

    At the outset, the Court notes that counsel's representation to the Magistrate Judge at Petitioner's plea hearing that she had discussed with Petitioner the collateral consequences of his conviction belies Petitioner's claims to the contrary. (Plea Hearing at 11.) Yet, even assuming that counsel did not warn Petitioner about deportation the Second Circuit, as Petitioner concedes, has declined to hold that ineffective assistance invalidates a guilty plea where defense counsel has merely failed to advise, as opposed to affirmatively misinform, a client of deportation consequences. See Couto, 311 F.3d at 187 (2d Cir. 2002) ("We have held that an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of reasonableness.") (citing United States v. Santelises, 509 F.2d 703, 704 (2d Cir. 1975) (per curiam) (noting that attorney's failure to inform a defendant that a guilty plea could result in deportation "is of no legal significance"); United States v. Salerno, 66 F.3d 544, 550-51 (2d Cir. 1995) (holding that defense counsel's failure to advise on collateral consequences of a plea does not amount to ineffective assistance of counsel). Although "competent defense counsel, following the advice of numerous practice guides, would have advised him" INS v. St. Cyr, 533 U.S. 289, 323 n.50 (2001) that his guilty plea would subject him to deportation, counsel's failure to do so does not fall below current prevailing professional norms, given that those standards are so low or obsolete. Accord Couto, 311 F.3d at 187-188 (implying need for "broader view of attorney responsibility"); Castillo-Acevedo v. INS, 2003 WL 2241622, at *4-5 (S.D.N.Y. 2003) ("[W]hile counsel *should* advise their clients of the adverse immigration consequences of a guilty plea, controlling law does not deem the failure to do so actionable.")

    Petitioner does not claim that counsel affirmatively misrepresented the deportation consequences of his guilty plea nor does the record suggest such a possibility. Instead Petitioner argues that counsel failed to "correct the court's misinformation." (Pet. at 1.) Because this Court has already found that the Magistrate Judge did not misinform Petitioner of the deportation consequences of his plea counsel cannot be deemed ineffective regarding this alleged failure. Accordingly, Petitioner has not satisfied the first prong of the test set forth in Strickland. Nor could Petitioner demonstrate prejudice because, despite Petitioners assertions that

13

## CONCLUSION

For the foregoing reasons, Petitioner's due process claim is procedurally barred and his ineffective assistance of counsel claim is untimely. Accordingly, the petition is DISMISSED in its entirety. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing "does not require a petitioner to demonstrate that he would prevail on the merits, but merely that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Santana v. United States, 2005 WL 180932, at *7 (S.D.N.Y. Jan. 26, 2005) (quoting Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002)) (internal quotation marks and citation omitted). Where a petition is dismissed on procedural grounds, the petitioner seeking a certificate of appealability must show that both the procedural and underlying constitutional issues are reasonably debatable. Sosa v. United States, 2003 WL 22218505, *1 (S.D.N.Y. Sept. 25, 2003). Petitioner has made no substantial showing of the denial of a constitutional right in this case. Accordingly, this Court denies a certificate of appealability.

SO ORDERED.

Dated: July 15, 2005
Brooklyn, New York

s/SJ
_____
Senior U.S.D.J.

---

had he known his deportation would be mandatory he would have gone to trial in hope of an acquittal, his counsel "indicated that she was not aware of any viable legal defense to the charge against Mr. Salama." (Pet. at 4 n.4.).

14

P-049